THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM PERRY<br>    *Plaintiff*,<br><br>    v.<br><br>HARRIS COUNTY, TEXAS a/k/a HARRIS COUNTY SHERIFF'S OFFICE<br><br>and<br><br>ED GONZALEZ, in his official capacity as HARRIS COUNTY SHERIFF<br><br>    *Defendants*. | Civil Action No.<br><br><br><br><br><br>JURY DEMANDED |

# COMPLAINT

## TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff WILLIAM PERRY ("Mr. Perry"), in the above numbered and entitled case, complains of HARRIS COUNTY a/k/a HARRIS COUNTY SHERIFF'S OFFICE (HCSO), and SHERIFF ED GONZALEZ, in his official capacity as HARRIS COUNTY SHERIFF (Hereafter, "Defendants" and/or "HCSO"), Defendants in the above numbered and entitled case, and for cause(s) of action would respectfully show unto the Court and jury as follows:

## PARTIES

1. Plaintiff, WILLIAM PERRY was employed as a Human Resources Manager for the HARRIS COUNTY a/k/a HARRIS COUNTY SHERIFF'S OFFICE (HCSO) at the 1200 Baker Street, Houston, TX 77002 during the time-period wherein the present of cause of action accrued. WILLIAM PERRY was employed by the HCSO from on or about May 21, 2014, to

May 19, 2021. At all times material, Plaintiff, WILLIAM PERRY, was an employee of the HCSO within the meaning of the Family and Medical Leave Act (FMLA).

2. Defendant, HARRIS COUNTY a/k/a HARRIS COUNTY SHERIFF'S OFFICE, which is a municipal government entity located in Harris County, Texas and may be served by serving its County Judge, Lina Hidalgo, Harris County Judge, at 1001 Preston, Suite 911, Houston, Texas 77002.

3. Defendant, ED GONZALEZ, was and is the duly elected Sheriff of Harris County, Texas. At all times material to this cause of action, ED GONZALEZ operated the Harris County Sheriff's Office in his official capacity. The Harris County Sheriff's Office is an organization formed pursuant to the laws of the State of Texas, operates within the State of Texas and is located within the confines of Harris County, Texas at 1200 Baker Street, Houston, TX 77002.

**JURISDICTION AND VENUE**

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff is asserting a cause of action that arises under a federal statute.

5. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b), (1) because HCSO's principle offices are located in the Southern District of Texas, Houston Division. Venue is also proper in this district and division pursuant to 28 U.S.C. § 1391(b), (2) because a substantial part of the acts or omissions giving rise to the claim occurred within this Judicial District.

**FACTS**

6. Mr. Perry began his employment with the Harris County Sheriff's Office (HCSO) as an HR Analyst, and then was promoted to an HR Manager. Mr. Perry is known by his colleagues to be professional, dependable, courteous, trustworthy, and committed to serving the HCSO for seven (7) years to the best of his abilities. Mr. Perry was dedicated to ensuring that

his staff achieved the goals of the organization. He utilized every opportunity to acquire knowledge of policies and procedures to better serve as a manager and to better educate his staff so that they too were fully capable of assisting employees with their needs and concerns. However, despite Mr. Perry's commitment and service to the organization he would ultimately be terminated, motivated by and/or because Mr. Perry exercised his FMLA rights.

7. On or about May 8, 2020, Mr. Perry and Veronica Weinberger (HR Manager) were asked by Major Edison Toquica to take over the duties and responsibilities of former Director of Human Resources, Adela Cortez until Ms. Cortez's replacement was hired.

8. On or about September 1, 2020, Courtney Ball was hired as Director of Human Resources. At the time of Ms. Ball's start with the HCSO, Mr. Perry had been working remotely since May 2020, on a rotational in-office and remote operational basis, due to the Corona Virus pandemic. Ms. Ball also worked remotely on a full-time basis from September 26, 2020, through December 15, 2020, due to maternity leave. Mr. Perry was a direct report of Ms. Ball but only worked in-person with her for nineteen (19) days from September 1, 2020, until September 26, 2020, before Ms. Ball went out on maternity leave. Ms. Ball did not qualify for FMLA leave; however, she was still allowed to take care of her family member and worked remotely without any interruptions to her HCSO network login.

9. While Ms. Ball's tenure with the department was short lived; under her leadership, Mr. Perry experienced a reduction in work hours, denial of his rights to intermittent FMLA leave, removal of Mr. Perry's access to the HCSO network, subjected to a baseless HCSO Internal Affairs Division (IAD) investigation, intentionally set up for failure, intentionally isolating Mr. Perry from his coworkers, discrimination in pay, unfair treatment in the workplace, and was subjected to intentionally false, misleading and discriminatory practices against him, which interfered with Mr. Perry's lawful exercise of his FMLA rights. Ms. Ball's egregious retaliatory

employment practices also created a hostile work environment for Mr. Perry in violation of his rights protected by the FMLA.

10. On or about November 2020, Mr. Perry requested both continuous and intermittent FMLA leave to care for and assist his mother with her cancer treatments. Mr. Perry was approved for continuous FMLA leave from on or about November 16, 2020 through December 18, 2020. Mr. Perry's intermittent FMLA leave request was also approved. The effective intermittent FMLA leave dates were December 19, 2020, through May 16, 2021. Mr. Perry's mother's medical provider stated that Mr. Perry may need to use FMLA 1-2 times per month, each occurrence lasting 2-3 days and that Mr. Perry may need to use FMLA leave one (1) time per month for treatments lasting 5-7 hours.

11. During the month of November 2020, while Mr. Perry was working under intermittent FMLA leave status, Ms. Ball harassed him with such adverse acts as having Mr. Perry's HCSO network access completely turned off. Ms. Ball told Mr. Perry to use his personal computer to complete his assignments. Mr. Perry was aware that this was a violation of HCSO policy and informed Ms. Ball that he could not do that per policy. However, Ms. Ball ordered him to do it anyway. Ms. Ball instructed her assistant to put 40 hours of work on his timesheet as sick leave, which was inaccurate. During multiple phone conversations, Ms. Ball could be heard, not allowing Mr. Perry to speak or state anything in response to her false and misleading allegations.

12. Around the end of November 2020, close in time to the Thanksgiving Holiday, Mr. Perry's father was diagnosed with Parkinson's Disease.

13. On or about December 22, 2020, Mr. Perry informed Ms. Ball that he would be returning to the office at 1200 Baker Street, Houston, TX to work on January 4, 2021.

14. On or about December 23, 2020, Mr. Perry requested intermittent FMLA leave to assist with providing care for his father who was diagnosed with Parkinson's Disease. However, Ms. Ball denied Mr. Perry's FMLA leave request, citing the reason for the denial was because the doctor did not indicate if the leave absences was for three (3) times a week or three (3) times a month. The medical provider was contacted and indicated via telephone that it was not possible for an occurrence to occur three (3) times a week and last for three (3) days. The leave request was for three (3) times a month as witnessed by Mr. Perry and Ronda Plaskett (HR Assistant) on the phone call. Ms. Ball received notification of this fact, but still refused to change her mind on denying the FMLA requested by Mr. Perry.

15. While Mr. Perry continued to be physically able to work each workday, Ms. Ball had reduced his working hours to "0" zero and stated on multiple occasions that she "wants to ensure that he was not working." Ms. Ball's adverse action in reducing Mr. Perry's work hours to zero was in retaliation for Mr. Perry exercising his FMLA rights to care for his terminally ill father because the HCSO was not allowed to force Mr. Perry to utilize more FMLA time than he requested.

16. On or about December 29, 2020, Ms. Ball initiated an investigation against Mr. Perry with the HCSO Internal Affairs Division (IAD), creating more workplace hostility for Mr. Perry. The false and misleading allegations by Ms. Ball were never addressed with Mr. Perry prior to the filing of the IAD investigation. Mr. Perry was never given a verbal or written warning of any misconduct or performance issues prior to the IAD investigation. Mr. Perry was also never placed on a Performance Improvement Plan (PIP).

17. On or about January 4, 2021, Mr. Perry physically returned to in-office work from taking FMLA leave. Upon Mr. Perry's return, Ms. Ball was aware he had no HCSO computer network access.

18. On or about January 7, 2021, Mr. Perry, while at the office, received a mandate from the IAD representative to leave the premises and work remotely until further notice. Once again Mr. Perry was placed in a hostile predicament. In accordance with HCSO policy IAD would have to release Mr. Perry to return to in-office work. However, Mr. Perry was never released from working remotely by the IAD.

19. Trevosa Oats, the newly hired administrative assistant to Ms. Ball, was allowed to work remotely from California for approximately three (3) months to care for a sick parent. Ms. Oaks was also granted the opportunity to receive overtime compensation as well. Ms. Ball showed disparate treatment as it related to Mr. Perry compared to her treatment of Ms. Oaks.

20. Mr. Perry was also denied the opportunity to attend the Human Resources Division wide education and team building event that was scheduled for January 29, 2021. Ms. Ball stated that she did not want Mr. Perry to attend the educational and team building event (while the entire HR division was shut down for the day). However, all HR team members were in attendance for the on-site training event, except for Mr. Perry. Ms. Ball retaliated against Mr. Perry by intentionally isolating him from his coworkers.

21. On or about February 2021, Mr. Perry's father's hospice medical provider completed a new FMLA certification which was later approved, and Mr. Perry was approved by the medical provider to return to work intermittently. Mr. Perry apprised Ms. Ball of his ability to work intermittently and complete his assigned tasks and duties; however, once again, Ms. Ball refused to allow Mr. Perry to work and removed his HCSO networking access on or about February 26, 2021. Ms. Ball stated to Mr. Perry, "I want to ensure that you are not working." Ms. Ball retaliated against Mr. Perry by intentionally forcing him to take more FMLA leave time than was necessary, which resulted in the unnecessary depletion of his FMLA leave bank hours. To be very clear, Mr. Perry never requested a full twelve (12) weeks of FMLA continuous leave.

22. Ms. Ball also reviewed Mr. Perry's FMLA certification which is not in accordance with HCSO personnel policies and procedures. Ms. Ball reviewed Mr. Perry's original FMLA certification for his father, as well as completed the original denial of intermittent FMLA, insinuating that the medical doctor was unclear regarding the time-period of days or weeks. On a previous occasion, Ms. Ball requested Mr. Perry's mother's FMLA certification to be authenticated after the FMLA certification had already been approved. Ms. Ball also violated Mr. Perry's FMLA rights by distributing and sharing his confidential and sensitive FMLA certification documents with multiple subordinates and unnecessary staff members.

23. On or about February 26, 2021, Major Whitaker sent out a blinded copy email to recipients stating, "I received a call from William Perry today about his work conditions. He stated that when dealing with Director Ball, he felt it was harassment, hostile work environment, and that he was considering hiring an Attorney. Mr. Perry also stated he was out on FMLA to take care of his mother and father. I advised him that I would call Director Ball and ascertain his work requirements and follow up with him…. I instructed Director Ball that Mr. Perry is not to be assigned any work." However, Major Whitaker never followed up with Mr. Perry, as he stated he would.

24. On or about Wednesday, April 21, 2021, Ms. Ball sent Mr. Perry a message disingenuously claiming, "I've reached out to you several times by calling and now texting. You still have not responded. I will take your lack of response to mean you are choosing to ignore my question regarding your unemployment claim." Ms. Ball further stated "I have not received a check in/update from you recently. The last time I received an update was March 15 – please check in with an update by noon this Friday." Although, Mr. Perry had responded to both Ms. Ball's unemployment inquiry on April 16, 2021, and HCSO legal Counsel Victoria Jimenez on Friday, April 16, 2021, Ms. Ball still denied that Mr. Perry had responded. Ms. Ball continued to

intentionally give false narratives regarding Mr. Perry to senior HCSO management officials, which were harassing and caused undue harm to Mr. Perry.

25. On or about April 30, 2021, Mr. Perry filed a formal grievance complaint wherein he stated to Major Quincy Whitaker, "Ms. Ball retaliated against me and reduced my working hours to zero (0) and disallowed me from working any hours in attempt to deplete all of my FMLA leave hours and paid leave time. Additionally, Ms. Ball removed my HCSO computer access; preventing me the ability to perform my essential job duties and functions that I had been performing daily." Mr. Perry kindly requested that Major Whitaker investigate the matters identified in his grievance and assist him in resolving the identified issues as soon as possible. Mr. Perry's also pleaded to Major Whitaker for assistance with a transfer to another division and a role apart from Ms. Ball's supervision.

26. In accordance with the HCSO policies and procedures, management must respond to a grievance complaint within five (5) days it was received. However, Major Whitaker never responded to Mr. Perry's grievance complaint of April 30, 2021.

27. On or about May 3, 2021, in an email to Major Whitaker, Mr. Perry stated:
"I William Perry would like to request the ability to return to intermittent working hours as I am physically able to work each work day and am available to accept full-time work for all of the days and hours required for my current work assignment as Human Resources Manager. If you are unwilling to remove me from reduced zero (0) working hour status at this time, I would like to request a leave absence to begin on May 5, 2021 and to extend through June 5, 2021 due to the continuing need to provide care to my terminally ill father; that I am the current sole guardian due to his incapacity. Your consideration in this matter is greatly appreciated – with sincere gratitude." A few hours after Mr. Perry sent the aforementioned email, Major Whitaker responded by email stating, "Your request is denied. You are ordered to return to work on

Thursday, May 6, 2021…and report to Major Diaz" at 5748 South Loop E, Houston, TX. However, that location does not have an HR department and was a further distance for Mr. Perry to travel for work. No other HCSO HR employees were required to report to work at that location at the time Mr. Perry was ordered to return to work at that location.

28. On or about May 6, 2021, Mr. Perry had a phone conversation with both Major Whitaker and Ms. Ball asking if he could work from home. Ms. Ball denied his request.

29. On or about May 11, 2021, Ms. Ball contacted Victoria Jimenez, Legal Services/Executive Command requesting to administratively dismiss Mr. Perry due to the untrue allegation of Job Abandonment. Ms. Ball failed to inform Ms. Jimenez that she indeed had communicated with Mr. Perry when he requested a leave of absence from both she and Major Whitaker in a phone conversation on May 6, 2021. Ms. Ball also stated that Mr. Perry did not meet performance expectations while working remotely previously and due to lack of timely communication, remote work options would not be allowed. However, Mr. Perry was continuously denied HCSO computer access, told to use his own personal computer and then ordered not to work on assignments so therefore Mr. Perry's ability to perform was intentionally restricted by Ms. Ball. Ms. Ball intentionally set Mr. Perry up for failure because he exercised his FMLA rights to care for his sick parents.

30. On or about May 19, 2021, Mr. Perry was sent a certified letter notifying him of his administrative dismissal (Job Abandonment). Mr. Perry was terminated exactly only nineteen (19) days after submitting the grievance report on April 30, 2021, wherein he specifically complained about the abuse of his FMLA rights by Ms. Ball.

31. On or about July 2, 2021, Mr. Perry appealed his unlawful termination to the Civil Service Commission (CSC).

32. On or about January 18, 2023, the Harris County Sheriff's Civil Service Commission held a meeting regarding Mr. Perry's appeal of his administrative termination with the Harris County Sheriff's Office (HCSO). After considering evidence and arguments from the HCSO and Mr. Perry's attorney representatives, the Commission voted in favor of overturning the HCSO's administrative termination of Mr. Perry and ruled that Mr. Perry be reinstated to his position of Human Resources Manager. Further, the Commission ordered that Mr. Perry shall receive back for forty-four (44) hours in the amount of $1,913.34.

33. Despite the above stated ruling in favor of Mr. Perry, as of the date of the filing of this federal complaint, HCSO has refused to implement the decision of the Commission.

34. The disparate and harassing treatment that Mr. Perry received from HCSO's former Director of Human Resources, Ms. Ball and other HCSO officials has caused him both physical and emotional pain and suffering. Mr. Perry did seek and continues to seek professional counseling due to the mental anguish he suffered from the abusive retaliatory behavior of Ms. Ball and other HCSO officials.

## COUNT 1

## FAMILY AND MEDCIAL LEAVE ACT - INTERFERENCE

35. Plaintiff, WILLIAM PERRY, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

36. Plaintiff is an individual entitled to protection under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*.

37. Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for the HCSO for twelve (12) months, had at least 1,250 hours of service for the HCSO during twelve (12) months preceding his FMLA leave, and worked at a location where the HCSO had at least fifty (50) employees within seventy-five (75) miles.

38. The HCSO is a covered employer under the FMLA in that they had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

39. Plaintiff's mother and father suffered from serious health conditions within the meaning of the FMLA.

40. The HCSO's actions interfered with Plaintiff's lawful exercise of his FMLA rights. Specifically, the HCSO denied Plaintiff his right to utilize intermittent FMLA leave to care of his parents who were suffering from serious health conditions.

41. The HCSO's actions constitute violations of the FMLA.

42. As a result of the HCSO's unlawful; actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against the HCSO:

    a. Back pay and benefits;

    b. Prejudgment interest on back pay and benefits;

    c. Front pay and benefits;

    d. liquidated damages;

    e. Attorneys' fees and costs;

    f. Injunctive relief; and

    g. For any other relief this Court deems just and equitable.

## COUNT II

## FAMILY MEDICAL LEAVE ACT - RETALIATION

43. Plaintiff, WILLIAM PERRY, realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

44. The HCSO retaliated against Plaintiff in violation of the FMLA in that Plaintiff's requests for FMLA leave, and the utilization of said leave was because of and/or a motivating

factor that prompted the HCSO to take several adverse employment actions against Plaintiff including but not limited to:

(a) Reduction in Plaintiff's work hours;

(b) Denial of Plaintiff's rights to intermittent FMLA leave;

(c) Removal of Plaintiff's access to the HCSO network;

(d) Subjecting Plaintiff to a baseless HCSO Internal Affairs Division (IAD) investigation;

(e) Intentionally setting Plaintiff up for failure;

(f) Intentionally isolating Plaintiff from his coworkers;

(g) Discrimination in pay;

(h) Subjecting Plaintiff to a hostile work environment;

(i) Terminating Plaintiff.

45. The HCSO's actions constitute violations of the FMLA.

46. As a result of the HCSO's unlawful; actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against the HCSO:

a. Back pay and benefits;

b. Prejudgment interest on back pay and benefits;

c. Front pay and benefits;

d. liquidated damages;

e. Attorneys' fees and costs;

f. Injunctive relief; and

g. For any other relief this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

47.     Plaintiff, WILLIAM PERRY, demands a trial by jury on all issues so triable.

Dated this 17th day of May 2023               Respectfully submitted,

/S/ Ashok Bail

_____

Ashok Bail
Attorney for Plaintiff

Bail Law Firm, PLLC
3120 Southwest Freeway, Suite 450
Houston, TX 77098
Tel. No. (832) 216-6693
Fax. No. (832) 263-0616
E-mail: ashok@baillawfirm.com
Attorney for Plaintiff